UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LEDENT HUMPHREY, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 2:12CV32 JCH |
| | ) |
| DRESSER-RAND COMPANY, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Dresser-Rand Company's Motion for Summary Judgment, filed June 20, 2013. (ECF No. 30). The motion is fully briefed and ready for disposition.

**BACKGROUND**

On or about June 24, 2008, Plaintiff Ledent Humphrey began working for Defendant at its location in Louisiana, Missouri. (Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Defendant's Facts"), ¶ 1).[1] Plaintiff was hired as a Field Technician II, commonly called a Regrouter, with a starting wage of $10.00 per hour. (Id., ¶¶ 1, 4). At the time of his termination on June 7, 2011, Plaintiff's hourly wage was $11.47 per hour. (Id.).

As a Field Technician II, Plaintiff typically was responsible for repairing, removing and replacing foundations. (Defendant's Facts, ¶ 5). Plaintiff would go to job sites around the country, as a member of a team consisting of a supervisor, a foreman, and several Field Technicians. (Id., ¶¶ 5, 6). The individuals selected to fill each position varied from job-to-job, and Albert Rendlen

---

[1] Plaintiff only responded specifically to certain of Defendant's facts. Pursuant to Local Rule 4.01(E), all facts to which Plaintiff did not respond are deemed admitted. *See Ridpath v. Pederson*, 407 F.3d 934, 936 (8th Cir. 2005); *Dotson v. Donohoe*, 2013 WL 171025, at *4 (E.D. Mo. Jan. 16, 2013).

was the person responsible for assigning employees to the various crews based on availability, experience, and business needs. (Id., ¶¶ 6, 7).[2]

During his employment with Defendant, Plaintiff complained of racial harassment on several occasions. For example, in early 2009 Plaintiff complained that another employee, Mike Smith, called him a racial slur on one occasion. (Defendant's Facts, ¶ 30). Plaintiff acknowledges that after he complained to Defendant, Smith never again referred to him by any such names. (Id.). On or about September 23, 2010, while on a job site in New Jersey with Paul Crites supervising, Plaintiff got into an altercation with co-worker John Lucas. (Id., ¶ 31). After Plaintiff reported to Crites that Lucas threw a respirator at him, and made racial slurs against him, Crites immediately confronted Lucas. (Id., ¶ 32). Lucas denied using any racially charged language, and Defendant maintains no other employees on the job site corroborated Plaintiff's allegation in that regard. (Id.).[3] While it is unclear whether Lucas was disciplined over this incident, Plaintiff offers no evidence that Lucas ever again used racial slurs against Plaintiff after the complaint to Crites. (Id., ¶¶ 33-34).[4]

During his last job assignment with Defendant in Jena, Louisiana, Plaintiff alleges he complained to Johnson, Defendant's Manager of Foundation Division, that he was subjected to racial comments by other employees on the job, including Jerry Shelton. (Defendant's Facts, ¶¶ 2, 40).

---

[2] Rendlen, together with Randy Johnson and Bob Cassidy, were the individuals responsible for hiring Plaintiff in 2008. (Defendant's Facts, ¶ 9).

[3] According to Plaintiff, others did hear the slur. (Plaintiff's Suggestions in Opposition to Motion for Summary Judgment ("Plaintiff's Opp."), P. 1).

[4] According to Defendant, Plaintiff reiterated his complaint against Lucas during a disciplinary meeting in April, 2011. (Defendant's Facts, ¶ 36). Mike Vieira, Defendant's Safety Manager, then conducted a second investigation and concluded that (1) Crites adequately had investigated the incident in September, 2010; (2) Plaintiff declined the offer to continue the investigation at that time; and (3) there was no evidence to corroborate Plaintiff's allegations regarding racial comments. (Id., ¶¶ 2, 37). Vieira did discipline Lucas for using inappropriate language, however. (Id., ¶ 37).

Plaintiff admits that Johnson said he would look into it, and further acknowledges that he never again heard Shelton use the derogatory term after he complained to Johnson. (Id.). Finally, during a disciplinary meeting on May 24, 2011, Plaintiff complained to Vieira, Robert Zembrzuski, and Johnson that other employees had used inappropriate racial language against him. (Id., ¶ 42). When asked to identify specifically any such employees, or give details to support his allegation, however, Plaintiff merely reiterated the complaints he previously had made against Lucas and Shelton. (Id.).

After his employment with Defendant ended, Plaintiff called Defendant's ethics hotline to complain about alleged race discrimination. (Defendant's Facts, ¶ 43). Thereafter, however, Plaintiff refused to participate in the company's attempt to investigation the allegations. (Id.).

During a meeting on April 20, 2011, Vieira told Plaintiff he was going to be assigned to a long-term job in Michigan. (Defendant's Facts, ¶¶ 51, 55). Vieira explained that the customer in Michigan strictly required all workers given access to the job site to pass a background check and a DCCHT breath, urine and hair drug test. (Id., ¶ 56). Vieira provided Plaintiff the necessary drug-testing forms, and instructed Plaintiff to get tested right away. (Id., ¶ 58). Although Plaintiff indicated to Vieira that he would stop and get tested on his way home from work that day, Plaintiff maintains he failed to do so because his supervisor, Johnson, said he did not have to take the drug test. (Id.; Plaintiff's Opp., P. 4).

In mid-May, 2011, Vieira received notification that Plaintiff had been selected for a mandatory annual random drug test by the third-party administrator of Defendant's drug testing program. (Defendant's Facts, ¶ 63). On or about May 23, 2011, while meeting with Plaintiff on another matter, Vieira asked Plaintiff about the hair portion of the April drug test. (Id., ¶¶ 64, 65).

Plaintiff responded that the test was fine, despite the fact that he had never submitted to the test in April. (Id., ¶ 65).[5]

On or about June 1, 2011, Vieira sent the mandatory random drug-testing forms via overnight delivery to the address provided by Plaintiff. (Defendant's Facts, ¶ 68). The forms were delivered to that address on June 2, 2011. (Id.). On June 7, 2011, Vieira accessed the company's electronic database, to see if Plaintiff had passed the second drug test. (Id., ¶ 69). At that time, Vieira learned that Plaintiff had submitted to neither the first nor the second drug test. (Id.). Vieira called to confront Plaintiff about the drug tests, and Plaintiff admitted he had not taken or passed either test. (Id., ¶ 70). Vieira then informed Plaintiff that his refusal to test violated company policy, and that his employment thus was being terminated, effective immediately. (Id., ¶ 71).

Plaintiff filed his Complaint in this matter on May 7, 2012. (ECF No. 1). Plaintiff alleges he was treated differently from other employees, and was subjected to negative comments, aggressive behavior, and harassment, all based on his race. (Id., ¶¶ 12, 13). Plaintiff further alleges that he was given less work and paid a lesser salary than Caucasian co-workers with less time, experience and qualifications than Plaintiff; was held to a different standard than Caucasian co-workers; and ultimately was terminated due to race discrimination and retaliation. (Id., ¶¶ 23-25).

---

[5] Plaintiff denies that he misled Vieira in this regard. (Plaintiff's Opp., P. 4). During his deposition, however, Plaintiff testified as follows:
    Q    [D]id you ever lead Mike Vieira to believe that you had taken a drug test
         even if you didn't state it directly to him?
    A    If I did, it probably wasn't on purpose if I did. I don't think I did.
    Q    So you concede that's a possibility?
    A    That may be a possibility.
(Plaintiff's Dep., P. 274).

- 4 -

As noted above, Defendant filed the instant Motion for Summary Judgment on June 20, 2013, asserting there exist no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. (ECF No. 30).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## DISCUSSION

## I.       Racial Harassment/Hostile Work Environment

"To establish a Title VII race-based hostile work environment claim, a plaintiff must show that: (1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Singletary v. Missouri Dept. of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). When evaluating a hostile work environment claim, the Court looks at the totality of the circumstances, "including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010) (internal quotation marks and citation omitted), *cert. denied*, 131 S.Ct. 2962 (2011). Furthermore, in order for harassment to affect a term, condition, or privilege of employment it must be severe, both "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Singletary*, 423 F.3d at 892 (citation omitted).

The prima facie case for a hostile work environment under the Missouri Human Rights Act ("MHRA") is similar to the standard under Title VII. *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666 (Mo. banc 2009). "To prevail on a hostile work environment claim under the MHRA, a plaintiff must prove: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) his protected class membership was a contributing factor in the harassment; and (4) a term, condition or privilege of his employment was affected by the harassment." *Griffey v. Daviess/DeKalb County Regional Jail*, 2012 WL 10881, at *5 (W.D. Mo. Jan. 3, 2012) (citation omitted). In deciding cases under the MHRA, courts are guided by Missouri law, and by federal

employment discrimination case law that is consistent with Missouri law. *Id.*, citing *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007).

### A. Was The Alleged Harassment Subjectively Offensive Or Unwelcome?

"Harassing conduct is considered unwelcome if it was uninvited and offensive." *Allen v. Missouri*, 2013 WL 2156259, at *6 (E.D. Mo. May 17, 2013) (internal quotation marks and citations omitted). "The proper inquiry is whether the plaintiff indicated by his conduct that the alleged harassment was unwelcome." *Id.* (internal quotation marks and citations omitted).

In its Motion for Summary Judgment, Defendant asserts Plaintiff's conduct indicated he was not subjectively offended by the alleged comments. (Defendant's Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memo in Support"), PP. 3-4). Specifically, Defendant notes that Plaintiff admittedly used the same vulgar language in conversation with black co-workers, and further enjoyed barbecues and beer with some of the very co-workers he accused of harassment. (Id.). Further, Defendant points out Plaintiff admitted he was not offended when black co-workers used similar racial slurs. (Defendant's Facts, ¶ 39).

By way of response, Plaintiff asserts that by reporting the incidents to multiple supervisors, he indicated by his conduct that the alleged harassment was unwelcome. (Plaintiff's Opp., P. 7). Furthermore, with respect to Defendant's claim that Plaintiff himself engaged in the same behavior, Plaintiff maintains there are different methods of using and/or pronouncing derogatory terms, and that he subjectively considers only some offensive.[6] (Id., P. 2). Finally, Plaintiff asserts that because

---

[6] During his deposition, Plaintiff explained the distinction as follows:
Q    Were any of your supervisors African American?
A    Deryl Bowden.
Q    Did Mr. Bowden ever use the term nigger?
A    Yeah, to black guys. You know, we didn't say nigger. We say nigga.
Q    So he used a form of that word. Is that an inoffensive way to say it?
A    Not on the job. We say it when we go to the gas station, laughing, go get a

- 7 -

at times he was capable of putting his feelings aside in order to socialize with co-workers does not negate the fact that he found their behavior to be unacceptable and unwelcome.  (Id., P. 7).

Upon consideration of the record before it, the Court is unwilling to hold as a matter of law that Plaintiff tacitly approved and/or participated in the objectionable behavior.  A genuine issue of material fact thus exists with respect to whether Plaintiff found the alleged harassment to be subjectively offensive or unwelcome, and so this portion of Defendant's Motion for Summary Judgment must be denied.

**B.     Did Defendant Respond Appropriately To Plaintiff's Complaints Of Harassment?**

**1.     Were Plaintiff's Alleged Harassers Supervisors Or Co-Workers?**

Defendant next asserts that it may not be held liable for the alleged hostile work environment, because it responded appropriately to Plaintiff's complaints of harassment.  Before addressing this contention, the Court first must consider the threshold question of whether Plaintiff's alleged harassers were supervisors or mere co-workers.  The question is important, because "[u]nder Title

---

        beer or something.  It's not nothing that offensive that--not meaning derogative.  You know, we say it--there's one way of saying it, and then there's another way of saying it.  You could say it, Okay, nigga.  You know, let me put it like this.  You can say, okay, Nigger, get over here and do this here, or you can say, What's up, nigga?  There's two different ways of saying things, and he would say it like that's how we would say it.  That's how they do it....
Q    But the question was did you use the term nigga when talking to Mr. Bowden?
A    No, because he was my boss.  He said it to me, you know, kidding around, Hey, you know, you want to go to the club tonight?  You know.  That's how he would say it.  You want to go to the club tonight?  Well, yeah, let's go to the club tonight.  That's how we would do it.
Q    And that wasn't offensive to you?
A    No, that's not offensive.  That's saying that we're going to go have a good time.  But if you say, You get your dumb nigger ass down there and get to work, that's offensive, you know.

(Plaintiff's Dep., PP. 113-115).

VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013).

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Id.* (citations omitted).[7]

The United States Supreme Court addressed the question in a recent case, holding that, "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 133 S.Ct. at 2443 (internal quotation marks and citation omitted). "The ability to direct another employee's tasks is simply not sufficient." *Id.* at 2448.[8] The Court thus turns to an examination of the facts of this case, to determine whether Plaintiff's alleged harassers possessed the power to take tangible employment actions against Plaintiff.

---

[7] Thus, the plaintiff has the burden of proving the employer was negligent in permitting the harassment to occur when the harasser was a co-worker, whereas the employer bears the burden of establishing the affirmative defense when the harasser was a supervisor. *Vance*, 133 S.Ct. at 2450.

[8] The Supreme Court made clear it was adopting a bright line test for who qualifies as a supervisor in order to facilitate application and promote resolution of the issue at an earlier stage of the litigation. *Vance*, 133 S.Ct. at 2449.

In support of its Motion for Summary Judgment, Defendant asserts the individuals accused of harassment here had no authority to hire or fire Plaintiff, to set his wages or benefits, or to reassign him to significantly different duties. (Defendant's Memo in Support, P. 5). Rather, Defendant maintains they were supervisors for job sites only, and not responsible for the overall management of employees. (Id.). In his response, Plaintiff does not dispute Defendant's characterization of the harassers' authority, instead asserting only that both Lucas and Crites viewed themselves as supervisors, and repeatedly threatened to fire Plaintiff. (Plaintiff's Opp., P. 8).

Upon consideration, the Court agrees with Defendant that whether or not Plaintiff's alleged harassers viewed themselves as supervisors is irrelevant for purposes of the instant motion. Instead, because they lacked authority to take tangible employment actions against Plaintiff, Defendant's job site supervisors were merely co-workers, and thus Defendant may be held liable only if it was negligent in controlling Plaintiff's working conditions. *See Vance*, 133 S.Ct. at 2439. *See also Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1057 (8th Cir. 2004) (holding alleged harasser was not a supervisor, because he lacked the power to hire, fire, promote, or discipline employees within his department).

### 2. Was Defendant Negligent In Controlling Plaintiff's Work Environment?

Under Eighth Circuit law, Defendant cannot be vicariously liable for racial harassment by non-supervisory co-workers. *Alvarez*, 626 F.3d at 419. Defendant may be directly liable for its employees' actions that violate Title VII, however, if Defendant, "[knew] or should have known of the conduct, unless it can show that it took immediate action and appropriate corrective action." *Id.* (internal quotation marks and citation omitted). Thus, when an employer, "takes prompt remedial action that is reasonably calculated to stop the harassment, the employer is not liable under Title VII for the underlying [racial] harassment." *Id.* (internal quotation marks and citation omitted). *See also*

*Hill*, 277 S.W.3d at 666 n. 6 (internal quotation marks and citations omitted) ("If the alleged harassers are co-workers, the plaintiff must also show that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.").

Upon review of the record, the Court finds that every time Plaintiff complained Defendant took prompt remedial action reasonably calculated to stop the alleged harassment. For example, while Plaintiff alleges that Smith, a co-employee, referred to Plaintiff by a racial slur in early 2009, he admits that after he complained Smith never did so again. (Defendant's Facts, ¶ 30; Plaintiff's Dep., PP. 142-43). In a more serious incident, Plaintiff alleges that on or about September 23, 2010, Plaintiff reported to Crites that Lucas threw a respirator at him and made racial slurs. (Defendant's Facts, ¶¶ 31, 32). Plaintiff does not dispute that Crites immediately confronted Lucas, and also interviewed other employees on the job site. (Id., ¶ 32). Further, while the parties dispute whether other employees corroborated Plaintiff's account, Plaintiff admits both that he declined further investigation into the matter, telling Crites to "just leave it alone," and that Lucas never again used racial slurs against Plaintiff after the complaint to Crites. (Id., ¶¶ 33, 34; Plaintiff's Dep., PP. 27-28, 95, 164).[9] Finally, Plaintiff alleges that on his last job assignment with Defendant, co-employee Shelton subjected him to racial comments. (Defendant's Facts, ¶ 40; Plaintiff's Dep., PP. 29-32, 85-86). Plaintiff complained to Johnson about the incident, and admits that thereafter he never again heard Shelton use that term. (Defendant's Facts, ¶ 40; Plaintiff's Dep., PP. 89-90).

---

[9] While Plaintiff attempts to parse his response, saying he admitted only that Lucas never again used racial slurs while working under Crites, Defendant correctly notes that during his deposition Plaintiff offered no evidence of other incidents involving Lucas that took place after September 23, 2010. This failure is consistent with the fact that during his disciplinary meeting with Vieira on April 20, 2011, Plaintiff complained only about the September 23, 2010, incident with Lucas.

As noted above, "[i]f an employer responds to harassment with prompt remedial action calculated to end it, then the employer is not liable for the harassment." *Alvarez*, 626 F.3d at 421 (citation omitted). "Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, the options available to the employer,...and whether or not the measures ended the harassment." *Id.* (internal quotation marks and citation omitted). Here, Plaintiff does not dispute that Defendant responded immediately each time he complained of harassment, nor does he provide evidence that Defendant's remedial measures failed to end the complained of harassment. That a different co-worker may have engaged in harassing behavior at a later time, and under different circumstances, does not negate the fact that Defendant responded promptly and appropriately to Plaintiff's complaints of harassment. Defendant's Motion for Summary Judgment on Plaintiff's claim of racial harassment must therefore be granted.

## II.     Race Discrimination

Title VII prohibits discrimination against employees with respect to compensation, terms, conditions, or privileges or employment, because of race. *See* 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff lacks direct evidence of discrimination, his Title VII claim of race discrimination is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir.), *cert. denied*, 133 S.Ct. 313 (2012). Pursuant to that framework, Plaintiff first must establish a prima facie case of discrimination. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011), *cert. denied*, 132 S.Ct. 1075 (2012). "To establish a prima facie case for race discrimination, a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to

an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson*, 670 F.3d at 853-54 (internal quotation marks and citation omitted). If the plaintiff succeeds in establishing his prima facie case, "the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action." *Id.* at 854 (internal quotation marks and citation omitted). Plaintiff then must prove the defendant's proffered rationale was merely pretext for discrimination, and may do so "by adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive." *Id.* (internal quotation marks and citation omitted).

The MHRA similarly prohibits employers from discriminating against individuals based upon race. *See* Mo.Rev.Stat. § 213.055. "To establish a prima facie case of discrimination in the workplace, a plaintiff must show that he (1) was a member of a protected class; (2) was qualified to perform his job; (3) suffered an adverse employment action; and (4) was treated differently from a similarly situated person not a member of the protected class." *Stull v. Fireman's Fund Ins. Co.*, 2012 WL 3815647, at \*6 (E.D. Mo. Sep. 4, 2012), citing *Ressler v. Clay County*, 2012 WL 2285980, at \*7 (Mo. App. Jun. 19, 2012). The fourth element also may be proved by "other evidence that would give rise to an inference of unlawful discrimination." *Ruppel v. City of Valley Park*, 318 S.W.3d 179, 185 (Mo. App. 2010) (internal quotation marks and citation omitted).

The Missouri Supreme Court has determined that the MHRA may offer greater discrimination protection than that available under federal standards. *See Daugherty*, 231 S.W.3d at 818-19. Missouri courts thus no longer apply the *McDonnell Douglas* burden shifting analysis, instead applying a standard derived from Missouri's approved pattern jury instructions pursuant to which an MHRA discrimination claim survives summary judgment, "if there is a genuine issue of material fact as to whether [the protected characteristic] was a 'contributing factor' in [defendant's

employment] decision." *Id.* at 820; *see also McCullough v. Commerce Bank*, 349 S.W.3d 389, 397 (Mo. App. 2011). "This standard offers greater protection than the federal one because a contributing factor need only have a part in producing the [discriminatory] effect." *Stull*, 2012 WL 3815647, at *7 (internal quotation marks and citations omitted).

### A.     Job Assignments And Pay

In his Complaint, Plaintiff alleges he was given less work, and paid a lesser salary than Caucasian co-workers with less experience and lower qualifications than Plaintiff. (Compl., ¶ 23). To establish his prima facie case, Plaintiff must provide "'specific, tangible evidence that employees who were similarly situated in all respects to him received different treatment from' the employer." *Allen*, 2013 WL 2156259, at *11, quoting *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Defendant maintains Plaintiff has failed to produce such evidence, instead relying solely upon speculation and conjecture. (Defendant's Memo in Support, P. 10).

In response, Plaintiff states as follows: "Mr. Humphrey was well aware of his coworkers, how long they had worked at the company, what type of work experience they had and what type of compensation they received. This is not purely speculation and conjecture but instead the result of talking and communicating with fellow employees. This isn't a case where Mr. Humphrey is stating he was worse off then (sic) both white and black employees.[10] He is purely stating that he was treated worse then (sic) similarly situated white employees with less work experience." (Plaintiff's Opp., P. 12).

Upon consideration, the Court finds Plaintiff's response insufficient to survive Defendant's Motion for Summary Judgment. Plaintiff offers absolutely no evidence, other than his own

---

[10] In fact, Plaintiff did compare himself with black colleagues, complaining that they too received better work assignments than Plaintiff. (*See* Plaintiff's Dep., P. 255).

- 14 -

unsubstantiated deposition testimony, to show that similarly situated white employees were given more or better job assignments than Plaintiff, or were compensated at a higher rate despite having equal or lesser qualifications. Instead Plaintiff fails to describe, even in general terms, the qualifications of the co-workers at issue, their respective pay rates, or the job assignments allotted to Plaintiff and his fellow employees. (*See, e.g.*, Plaintiff's Dep., PP. 93-94, 255, 258-59).

"The test for whether employees are 'similarly situated' is a 'rigorous' one." *Stull*, 2012 WL 3815647, at *8 (citation omitted). Plaintiff, "has the burden of demonstrating there were individuals similarly situated in all relevant aspects to him by a preponderance of the evidence." *Allen*, 2013 WL 2156259, at *11, citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Plaintiff's vague allegations fail to establish a genuine issue of material fact with respect to whether similarly situated employees were treated differently than he, *see Stull*, 2012 WL 3815647, at *10, and so this portion of Defendant's Motion for Summary Judgment must be granted. *See Davenport v. Riverview Gardens School Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (affirming the grant of summary judgment when the plaintiff maintained similarly situated employees were treated differently, but failed to provide evidence of such other than his own unsubstantiated allegations during his deposition); *Hood v. Aaron Rents, Inc.*, 2009 WL 4828709, at *5 (E.D. Mo. Dec. 7, 2009) (same); *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010) (affirming the grant of summary judgment when plaintiff failed to provide sufficient detail to permit the court to determine whether the individuals named were in fact similarly situated to plaintiff).[11]

---

[11] While the Court recognizes that Plaintiff is not required to show similarly situated employees were treated differently in order to satisfy the fourth element of his prima facie case, Plaintiff offers nothing else tending to give rise to an inference of unlawful discrimination. *See Ruppel*, 318 S.W.3d at 185. Plaintiff thus fails to establish a genuine issue of material fact as to whether his race was a contributing factor in Defendant's alleged employment actions. *See Stull*, 2012 WL 3815647, at *10.

**B.     Termination**

Defendant next asserts Plaintiff fails to demonstrate Defendant engaged in race discrimination when it terminated his employment. (Defendant's Memo in Support, PP. 11-13). As support for this contention, Defendant maintains Plaintiff fails to establish a prima facie case of race discrimination under either Title VII or the MHRA, as Plaintiff offers no evidence he was meeting his employer's legitimate expectations. Specifically, Defendant notes it had in place detailed drug testing policies, of which Plaintiff was aware, providing that a failure to submit to testing within the required time frame constituted a refusal to test, and grounds for immediate dismissal. (*See* Defendant's Facts, ¶¶ 12-20, 65-71). Plaintiff admittedly did not submit to tests in April, and May, 2011, and further may have misled Vieira into believing that he had in fact taken the first test. Defendant maintains Plaintiff's refusal to submit to testing and subsequent concealment were the only factors contributing to Defendant's decision to terminate his employment. Defendant relies on this same evidence to assert that there existed a legitimate, non-discriminatory reason for Plaintiff's firing, and further notes that the circumstances of Plaintiff's firing do not give rise to an inference of discrimination, as Plaintiff offers no evidence that similarly situated employees outside the protected class were treated differently.

In his response, Plaintiff attempts to establish that Defendant's legitimate, non-discriminatory rationale was merely a pretext for race discrimination. (Plaintiff's Opp., PP. 12-13). As support, Plaintiff notes that he previously underwent a number of drug tests for Defendant successfully, and that he only declined to submit to the ones at issue here because one of his supervisors advised him

not to, "until after [Plaintiff] has been able to receive the psychiatric help needed as a result of the harassment and abuse." (Id., P. 12).[12]

Upon consideration, the Court finds Plaintiff fails to establish a genuine issue of material fact with respect to whether Defendant's legitimate, non-discriminatory rationale was merely a pretext for race discrimination. "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Gibson*, 670 F.3d at 854 (internal quotation marks and citation omitted). Here, as noted above it is undisputed that Defendant followed its drug testing protocol in terminating Plaintiff's employment. Furthermore, Plaintiff acknowledges that Defendant has been consistent in its contention that Plaintiff was fired for violating the drug policy. *See Putman v. Unity Health System*, 348 F.3d 732, 736 (8th Cir. 2003) (internal quotation marks and citation omitted) ("Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination."). Finally, Plaintiff offers absolutely no evidence that similarly situated employees outside the protected class were treated differently; in other words, he points to no individuals who either refused to take a required drug test, and/or lied about having taken one, and were not discharged as a result. *See Stull*, 2012 WL 3815647, at *8 (internal quotation marks and citation omitted) ("For discriminatory discipline claims, employees are similarly situated when they are involved in or accused of the offense and are disciplined in different ways."). *See also Allen*, 2013 WL 2156259, at *11 (citation omitted) ("The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standard, and engaged in the same conduct without any mitigating or distinguishing

---

[12] Once again, Plaintiff provides only his own unsubstantiated deposition testimony to support his claim that Johnson instructed him not to submit to the mandatory drug testing.

- 17 -

circumstances."). Under these circumstances, Defendant's Motion for Summary Judgment on Plaintiff's race discrimination claims with respect to his termination must be granted.

### III.     Retaliation

"Title VII prohibits retaliation against employees who initiate or participate in a proceeding or investigation that claims their employer violated Title VII." *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008), citing 42 U.S.C. § 2000e-3(a). Where, as here, Plaintiff lacks direct evidence of discriminatory retaliation, the *McDonnell Douglas* analysis applies.[13] *Gibson*, 670 F.3d at 856. Plaintiff thus first must set forth a prima facie case of retaliation, by showing, "that he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." *Id.* (internal quotation marks and citation omitted). "[I]f the plaintiff puts forth a prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Id.* at 856-57 (internal quotation marks and citation omitted). "Finally, if the employer proffers a race-neutral rationale, the plaintiff may attempt to refute the asserted reason as mere pretext." *Id.* at 857.

"To establish a prima facie case of retaliation under the MHRA, a plaintiff must prove that: (1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal connection existed between the complaint and the adverse action." *Griffey*, 2012 WL 10881, at *7 (citation omitted). Plaintiff need not show that retaliation was a substantial or determining

---

[13] Plaintiff apparently attempts to provide direct evidence for his retaliation claim, in the form of an affidavit from his former co-worker, David Stevens. (*See* ECF No. 37-1). Upon consideration, however, the Court finds Mr. Stevens' allegations fail to constitute direct evidence of retaliation, both because they are vague with respect to when the alleged incidents occurred, and because the statements noted in the affidavit contain inadmissible hearsay.

factor in the employment decision; rather, "proving a causal connection between the complaint and the adverse action depends on showing that the complaint was a contributing factor in the adverse action." *Id.* (citations omitted).

Upon consideration, the Court finds Plaintiff's retaliation claims fail for the same reasons as his race discrimination claims. In other words, Plaintiff offers absolutely no evidence, other than his own unsubstantiated deposition testimony, to show that similarly situated employees who did not complain of discrimination were given more or better job assignments than Plaintiff, or were compensated at a higher rate despite having equal or lesser qualifications. *See Gibson*, 670 F.3d at 857 (internal quotation marks and citation omitted) ("A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact."). He thus fails to establish a genuine issue of material fact with respect to whether retaliation was a contributing factor to his allegedly unequal work conditions. *See Hood*, 2009 WL 4828709, at *5 (citation omitted) ("Plaintiff has provided only rumor and conjecture, which are insufficient to defeat Defendant's Motion for Summary Judgment"). Plaintiff further fails to demonstrate Defendant's legitimate, non-discriminatory reason for his termination was merely a pretext for retaliation, because as noted above Defendant followed its drug testing protocol, was consistent in its contention that Plaintiff's employment was terminated for his violation thereof, and there exists no evidence that similarly situated employees who did not complain of harassment or discrimination were treated better. Under these circumstances, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims must be granted. *See Alvarez*, 626 F.3d at 416 (as long as the defendant honestly believed the plaintiff violated company policy, and acted on that basis, it is not liable for discrimination).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dresser-Rand Company's Motion for Summary Judgment (ECF No. 30) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.


Dated this 9th day of September, 2013.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE